UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEBORAH K. WITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:04-0928 |
| | ) | Consolidated With |
| | ) | Case No. 3:04-1064 |
| | ) | Judge Echols |
| METAL MOULDING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is the Motion for Summary Judgment (Docket Entry No. 31) filed by Defendant Metal Moulding Corporation ("MMC"), to which Plaintiff Deborah K. Witt has responded in opposition (Docket Entry No. 34).

### I. PROCEDURAL BACKGROUND

This is an employment discrimination action which was originally filed *pro se* by the Plaintiff. After counsel was appointed, Plaintiff filed a Sixth Amended Complaint in which she alleged she was subjected to workplace harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* (Counts I & II, Docket Entry No. 13) and that her employment was terminated in retaliation for engaging in statutorily protected activity, also in violation of Title VII and the THRA (Counts III & IV). Additionally, Plaintiff brought state common law claims for the intentional infliction of emotional distress (Count V) and for civil conspiracy (Count VI).

1

On December 5, 2005, the Court entered an Order (Docket Entry No. 25) relating to the Report and Recommendation (Docket Entry No. 21) issued by the Magistrate Judge on Defendant's Motion to Dismiss. In that Order, the Court dismissed the claims against the individual defendants and also dismissed Plaintiff's claims for the intentional infliction of emotional distress and civil conspiracy (Counts V and VI). Based upon that ruling, Plaintiff's claims for workplace harassment and retaliation (Counts I-IV) remain.

## II. RELEVANT FACTS

Given the presentation of the parties, the facts are difficult to set forth in a clear fashion. Defendant has provided a Statement of Undisputed Material Facts. However, many of those factual statements contain recitations of the allegations made by the Plaintiff in the various incarnations of her Complaint, along with the charges she filed with the Equal Employment Opportunity Commission. Summaries of those pleadings are unhelpful since they are not evidence for purposes of summary judgment.

For her part, Plaintiff responded to Defendant's Statement of Undisputed Facts, albeit not in the form envisioned by Local Rule 56.01(c) which requires citation to specific evidence. For example, the underlying essence of Plaintiff's complaint is that she was subjected to workplace harassment which was not adequately addressed by the Defendant. In its recitation of the facts, Defendant merely lists in general fashion the types of harassment Plaintiff was allegedly subjected to. (Def. SOF ¶ 3). In response, Plaintiff agrees with that statement but argues that "the

2

pleadings contain many more instances of derogatory sexual remarks, many made directly to the Plaintiff, and derogatory sexual actions directed against Plaintiff while working at Metal Moulding." (Docket Entry No. 35 ¶ 3). Again, the pleadings are not evidence.

To compound matters, Plaintiff's response to Defendant's Motion for Summary Judgment is 1½ pages long. While brevity may sometimes be commendable, Plaintiff's response is of little aid to the Court in resolving the present Motion for Summary Judgment because the response contains no citation to legal authority and asks the Court to deny summary judgment based upon conclusory statements, the pleadings in the record, and Plaintiff's response to Defendant's Statement of Undisputed Facts, none of which is evidence under Rule 56.

The Court has endeavored to ascertain the facts in this case by reviewing the *evidence* in the record, including the excerpts of Plaintiff's deposition which have been supplied by the Defendant. The Court has also read the Declarations submitted by the Defendant. That review suggests the following to be the relevant facts.

MMC is a wholesale custom manufacturer of metal and plastic parts for the boating industry. MMC produces such things as aluminum lids, instrument panels, dash panels, vents, drain plates, seat bases, and transom plates, brackets, radio boxes, glove boxes, and rod holders.

Plaintiff is a 51 year old white female who first applied for employment at MMC in August 2002. Unbeknownst to MMC, Plaintiff

3

misrepresented her educational background, claiming she had a high school education when, in fact, she dropped out of school in the eighth grade. Nevertheless, Plaintiff was hired by MMC on October 13, 2003.

From the date of her hire until around July 2004, Plaintiff's employment at MMC was uneventful. She claims, however, that around that time several employees began to harass her. The harassment related to the type of medication she was taking, the type of music she listened to, and included sexually-charged comments. Plaintiff asserts that the harassment stemmed mostly from employees who were related to one another.

The first incident of harassment appears[1] to have occurred sometime in July 2004 when Plaintiff returned to work from visiting the doctor regarding a back ache. A female co-worker named Melinda, who had previously expressed no concern about Plaintiff's well-being, asked Plaintiff about her appointment and whether she had been given pain medication. When Plaintiff indicated that she had been prescribed pills for her pain, the co-worker asked for some since she too had a bad back. Plaintiff refused and told Melinda to get out of her work area. (Pf. Depo. at 45-47).

---

[1]The Court utilizes the term "appears" because the record is unclear if in fact this was the first incident of harassment. In her deposition, Plaintiff said this was the first incident of harassment. Later, however, after being confronted with an Equal Employment Opportunity Commission ("EEOC") charge, Plaintiff indicated that the first incident had to do with Mark Esbach which will be discussed below.

4

As a result of this incident and maybe (although it is not clear) after several employees, all of whom were related, "start[ed] being vulgar and talking nasty among each other" and made "some terrible gestures," (Pf. Depo. at 47),[2] Plaintiff went to the front office and was speaking with Rita, the receptionist, when James Parrish ("Parrish"), the Plant President, and Terry Majors ("Majors"), the Plant Manager, were coming into the office and Plaintiff was asked to tell them what was bothering her.[3] Majors said he would handle the situation and claims that he had Plaintiff moved to another paint line which would put her in a different work environment. However, within two days, Plaintiff had a conflict with another female employee and was returned to her previous position.

The second instance of harassment related to an incident with a co-worker named Mark Esbach ("Esbach")who was in his mid-twenties and lived not far from Plaintiff. Because Mark's wife also worked and she had the car, Mark occasionally prevailed upon Plaintiff to give him a ride home. On one such occasion, as they neared Mark's house, he commented that he liked older women and invited Plaintiff into his home, saying they could shower together since his wife

---

[2]In her deposition, Plaintiff was not exactly clear as to what was said.

[3]Parrish and Majors claim that in July 2004, they overheard Plaintiff speaking with the receptionist, stating that everybody hated her. Upon overhearing this they spoke with Plaintiff in the office. Plaintiff did not complain about sexual harassment, only that all of the women in the plant hated her. (Parrish Decl. ¶ 4; Majors Decl. ¶ 3).

5

would not be home for some time.  Plaintiff told Mark he was her son's age and she was not interested.  The next day she told him that she would no longer be able to offer him a ride home from work.

The incident with Esbach was reported to the human resources department at the end of August 2004.  Plaintiff states that both she and Mark were called into the office separately and told not to look, speak, or talk to each other.  (Pf. Depo. at 95-96).

For his part, Majors states that the second complaint involved Esbach and Wayne Osburn ("Osburn").  Plaintiff's complaints about Esbach were not primarily work-related, although there were some complaints about Esbach and Osburn making some sexual comments which were directed to Plaintiff.  Upon being confronted by Majors, both denied any improper remarks.  However, Majors warned them, told them that any future incidents could result in termination under MMC's sexual harassment policy,[4] and told them to refrain from communicating with Plaintiff.  (Majors Decl. ¶ 5).

Plaintiff claims that after the incident, she tried to avoid the individuals who were harassing her.  However, a few days later she was placing items on a pallet.  As she stooped over, a couple of the men were looking at her posterior and talked about grabbing it.  One of the employees said something to the effect of "how

---

[4]MMC had in force a Sexual Harassment Policy which provided that sexual harassment would not be tolerated, that employees should report any such harassment to their supervisor or Parrish, and that corrective action would be taken if the allegations were substantiated.

6

would you like some of that"? and another replied that he did not think he would want any of "that" because it was probably too "loose." Plaintiff went back to the office and spoke with Majors who said he would take care of it.

According to Plaintiff, the employees were called into Major's office one by one and as each employee entered the office, Majors put his arm on their shoulders and patted them on the back. The harassing did not cease. In fact, one of the individuals who had purportedly been counseled yelled at Plaintiff that he would say and do to her whatever he pleased and nobody was going to tell him differently. Plaintiff also claims that after those counseling sessions, whenever Majors saw Plaintiff he would look at her as if she had done something wrong. (Pf. Depo. at 47-50).

During the first week of September, 2004, Joseph Lincoln, a co-worker, kept asking Plaintiff how she was doing. He did this repeatedly over a two-day period and ultimately came by Plaintiff's workstation, leaned into her face, and said "Debbie you don't look so good." (Pf. Depo. At 53-54). Plaintiff told him that if he did not leave her alone, she was going to call the police.

Plaintiff claims she returned to the office on Friday, September 10, 2004, to complain and was once again told by Majors that he would handle the situation. When asked how he would accomplish that since the employees were all family, Majors allegedly stated that he would fire the whole family if necessary. (Plaintiff Depo. at 54-55). Plaintiff claims that after she spoke with Majors she was given her check and went home early as

7

previously arranged. The following Monday, Plaintiff was scheduled to have the day off because it was her birthday.

Majors recalls the events of Friday, September 10, 2004, differently. He claims that he sent Plaintiff home early after she became enraged, started throwing tools, and using profanity towards her co-workers. (Majors Decl. ¶ 7). Plaintiff's alleged outburst was witnessed by several employees and reported to management. (Minchey Decl. ¶ 3; Lincoln Statement).

On Monday, September 13, 2004, Plaintiff filed a Charge of Discrimination with the EEOC. On September 14, 2004, upon her return to work after her scheduled days off, Plaintiff was terminated from her employment with MMC, ostensibly because of her behavior on September 10, 2004. It was during her termination that Plaintiff informed MMC she had filed a charge of discrimination. (Def. SOF ¶ 8).

The Court recognizes the foregoing time line may not be entirely accurate. For example, Plaintiff has maintained that she complained three times, although the above recitation suggests that she complained perhaps four times. Another example relates to the subject of Plaintiff's first complaint. In her deposition Plaintiff claimed that the first incident about which she complained had to do with employees making rude gestures and laughing. Later, when confronted with her initial EEOC charge, Plaintiff claimed that the first incident about which she complained primarily had to do with the incident where Mark asked her to come in his house and shower with him. If, in fact, this

8

was the incident about which Plaintiff first complained, the time line does not make sense because the incident with Esbach occurred at the end of August and this would not leave time for other complaints to be spread out over several weeks prior to Plaintiff's termination on September 14, 2004.

The inability to construct the time line is not the fault of the Court. The Court has scoured the record before it and the record is unclear as to what occurred when. Nevertheless, it appears undisputed that there were a handful of incidents that occurred over a period of little more than a month. Many of the incidents about which Plaintiff complains were not brought to the direct attention of management. Plaintiff did, however, complain on two or three separate occasions about harassment.

### III. **STANDARD OF REVIEW**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

9

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

Plaintiff's claims for allegedly being subjected to a hostile work environment and retaliation are brought under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.*, with claims under the latter statute being analyzed in the same way as claims under the former. Frizell v. Southwest Motor Freight, 154 F.3d 641, 646-47 (6th Cir.1998); Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn.1996)).

10

**A.   *Hostile Work Environment***

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for a covered employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .".  42 U.S.C. § 2000e-2(a)(1).  "The phrase 'terms, conditions, or privileges of employment'. . . includes requiring people to work in a discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 20, 114 S.Ct. 367 (1993).

"In order to establish a hostile work environment claim, an employee must show the following: (1) the employee is a member of a protected class, (2) the employee was subject to unwelcomed sexual harassment, (3) the harassment was based on the employee's sex, (4) the harassment created a hostile work environment; and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior."  Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).  MMC contends Plaintiff has failed to show either that the alleged harassment created a "hostile work environment" as that phrase has been described by the courts, or that MMC failed to take appropriate steps to prevent and correct the alleged wrongful behavior.   The Court agrees.

A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

11

Harris, supra 510 U.S. at 21. Hence, "not all workplace conduct that has sexual overtones can be characterized as harassment and forbidden by statute." Black v. Zaring Homes, Inc., 104 F.3d 822, 825 (6th Cir. 1997). Instead, "[t]he concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women." Bakersville v, Culligan Intern. Co., 50 F.3d 428, 430 (7th Cir. 1995).

To determine whether workplace harassment is sufficiently severe or pervasive, the Court is to consider the "totality of the circumstances." Williams v. General Motors, 187 F.3d 553, 562 (6th Cir. 1999). The Court is also required to utilize both an objective and a subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard the environment as abusive. " Bowman, supra, 220 F.3d at 462. "Appropriate factors for the court to consider when determining whether conduct is severe or persuasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23).

In this case, when viewed in light of the totality of the circumstances, Plaintiff cannot show the allegedly harassing conduct was so pervasive or severe as to alter the conditions of

12

her employment.  Part of the events about which she complains did not relate to her protected status as a female.  In this regard, Melinda's request for pills cannot be construed as sexual harassment, nor can Lincoln's repeated questions about how she was doing be viewed as harassment "because of sex."  What remains is Esbach's suggestion that he liked older women and would like Plaintiff to join him in the shower, a couple of gestures, some laughter (which may or may not have pertained to Plaintiff), and a handful of crude comments about Plaintiff's anatomy.  These comments were made by different individuals over a span of several weeks.

When compared to cases where a plaintiff has established the existence of a hostile workplace, it is clear that present Plaintiff has not made a *prima facie* showing of a hostile work environment.  In Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir. 2005), the Sixth Circuit summarized such cases, writing:

> In EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 508-09 (6th Cir.2001), we found that the plaintiff made a prima facie showing of a hostile workplace where a male supervisor grabbed a male employee's genitals on two separate occasions, stalked the employee several times a day, and where the employee's co-workers taunted him for making a harassment complaint. Likewise, in Williams [v. General Motors Corp., 187 F.3d 553 (6th Cir. 1999)], we found that a hostile work environment was shown when over four months, a male supervisor stared at the plaintiff's breasts and said "[y]ou can rub up against me anytime . . . you would kill me . . . I don't know if I can handle it, but I'd die with a smile on my face, came up behind her, put his arm around her neck and told her that she "left the dick out of the hand" when she wrote "Hancock Furniture Company," and came up behind her on another occasion while she was bending over and told her to back up into him. Id. 562-64.

13

In contrast, a hostile work environment was not shown where, over a two month period, a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house. See <u>Stacy v. Shoney's, Inc.</u>, No. 97-5393, 1998 WL 165139, at *1-3 (6th Cir. 1998) (unpublished). The Seventh Circuit found that alleged harassment lacked severity where, over a two-year period, a male supervisor and co-workers, made sexual jokes about the plaintiff, commented on how she should eat a banana, told her not to wave at squad cars because people would think she was a prostitute, stared at her breasts, and touched her on the arms, fingers, and may have once poked at her buttocks. <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 357 (7th Cir. 1998).

<u>Id</u>. at 351-52.

While the Court recognizes "there is no bright line rule as to what constitutes a hostile work environment," <u>id</u>. at 351, the Court finds that Plaintiff's allegations suggest boorish conduct rather than conduct that could be construed as pervasive enough to alter the conditions of her employment and create an abusive situation. Plaintiff's claims depict isolated incidents over a short period of time, not pervasive sexual harassment. "Title VII was not meant to create a 'general civility code," and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." <u>Id</u>. at 352 (citation omitted).

Yet even if Plaintiff's allegations fall on the other side of the line and suggest an abusive working environment, Plaintiff has presented insufficient evidence to hold MMC liable.

The conduct about which Plaintiff complains has to do with statements made by co-workers, not supervisors, and this distinction is important in light of the Supreme Court's companion

14

decisions in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275 (1998) and Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998). Where the alleged harasser is a co-worker, the employer will be liable only if the plaintiff can show the employer knew, or should have known, about the harassment and failed to take appropriate remedial action. Faragher, 524 U.S. at 761-73; 118 S.Ct. at 2292-93; Ellerth 524 U.S. at 761-63; 118 S.Ct. at 2269.

In this case, Plaintiff admits that MMC took action each time she complained of sexual harassment. According to Plaintiff's account, after the incident with Esbach, both she and he were called into the office and told to stay away from each other. After the incident relating to crude comments being made when she was using the pallet jack, all of the alleged wrongdoers were called into Majors' office and counseled. Finally, after the incident where Lincoln allegedly inquired into Plaintiff's well-being, Majors told Plaintiff that he would fire an entire family if necessary.

Moreover, Majors has presented a declaration in which he sets forth what he did after each incident. According to him, after the incident with Melinda, Plaintiff was moved to another area so that the two would not have to interact. After Esbach's comments, Esbach and Osburn were called into Majors' office, warned about improper conduct, and told that any such future conduct could result in termination. When Plaintiff complained that she overheard "them" talking about her, Majors investigated the matter

15

by talking to the other people in Plaintiff's department but could not confirm that any inappropriate activity had occurred. Importantly, Plaintiff has presented no evidence which disputes Majors' declaration regarding the actions he took.

Plaintiff has the burden of showing that MMC failed to take prompt and effective corrective action once it learned of workplace harassment. Rudd v. Shelby County, 166 Fed. Appx. 777, 778 (6th Cir. 2006). "'The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified.'" Collette v. Stein-Mart, Inc., 125 Fed. Appx. 678, 686 (6th Cir. 2005)(citation omitted). "By doing so, 'the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace.'" Id.

The undisputed evidence before the Court shows that each time MMC learned of a complaint it took prompt action to quell the problem. In fact, it was Majors and Parrish who interjected themselves into the process as Plaintiff had not initially presented her complaint to them, but instead voiced her concerns to the receptionist. MMC made prompt inquiries and when alleged wrongdoers were identified they were counseled and told that sexual harassment would not be tolerated. While the harassment did not stop immediately, this was probably because the actors involved were different. Moreover, MMC had an anti-harassment policy in effect and there is no evidence before the court which would suggest it was not enforced or that the employees were unaware of

16

the policy. Cf., EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 510 (6th Cir. 2001)(a reasonable jury could find in favor of plaintiff where evidence showed, among other things, that the company's harassment policy was not enforced and the employees were unaware that such a policy existed).

When an employer responds to a complaint of harassment, "it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness." Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 873 (6th Cir. 1997). Given the evidence which is contained in the record, the Court holds that a reasonable jury could not find that MMC exhibited either indifference or permissiveness in relation to the alleged harassment of Plaintiff. Accordingly, MMC is entitled to summary judgment on Plaintiff's harassment claims under Title VII and the THRA.

**B. Retaliation**

In order to establish a *prima facie* case of retaliation under Title VII and the THRA, Plaintiff must show: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action." Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000)(emphasis omitted). "If and when a plaintiff has established

17

a *prima facie* case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Id. at 792-93 (citation omitted). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" Id. at 793 (citation omitted).

In the present matter, Plaintiff cannot establish a *prima facie* case because she cannot show either that the exercise of a protected right was known to MMC at the time it decided to take adverse action or that there was a causal connection between that action and the exercise of a statutorily protected right. The undisputed evidence before the Court is that Plaintiff first filed a charge of discrimination on September 13, 2004. Plaintiff was fired the next day, but it was only during the termination process that MMC became aware that Plaintiff had filed a charge of discrimination. Hence, MMC could not have taken its action with the knowledge of, and on account of, Plaintiff having filed a Charge of Discrimination with the EEOC.

Even if Plaintiff could establish a *prima facie* case, she still cannot present a jury issue on her retaliation claims because Defendant has established a legitimate non-discriminatory reason for Plaintiff's discharge – her cursing and throwing tools – and Plaintiff has not shown this to be pretextual.

Plaintiff claims she did not curse and throw tools on Friday, September 10, 2004. However under the Sixth Circuit's modified

18

version of the Seventh Circuit's "honest belief rule," this is insufficient. The modified "honest belief rule" provides that an employer can "avoid a finding that its claimed nondiscriminatory reason was pretextual" by "'establish[ing] its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006)(citation omitted). When the employer makes such a showing, "the employee has the opportunity to produce proof to the contrary." Id.

In this case, MMC has shown a reasonable reliance on facts which supported Plaintiff's termination for non-discriminatory reasons. At least two employees have indicated that on the Friday in question, Plaintiff was yelling and throwing tools. While Plaintiff claims she was not doing such things, she has failed to offer any proof that the true basis upon which MMC made its decision was other than the employee's statements which accused her of such conduct. Because Plaintiff "has offered no evidence to indicate that [MMC] made its decision on grounds other than those offered," id., summary judgment is appropriate.[5]

---

[5] Given this Court's conclusion, it is unnecessary for this Court to discuss Defendant's remaining arguments relating to back pay, compensatory and punitive damages, and the after-acquired evidence doctrine.

19

## IV. CONCLUSION

For the foregoing reasons, Defendant Metal Moulding Corporation's Motion for Summary Judgment (Docket Entry No. 31) will be granted and this case will be dismissed.

An appropriate order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE